AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

<u>    Western    </u> DISTRICT OF <u>    District    </u>

FILED
FEB 16 2006
CLERK___ DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

EP06CR 517

UNITED STATES OF AMERICA
V.

1) ████████████████

2) ████████████████
(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: ████████

06-00895G

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or <u>February 15, 2006</u> in <u>Hudspeth</u> County, in the <u>Western</u> District of <u>Texas</u> defendant(s) did, (Track Statutory Language of Offense)

Knowingly and intentionally possess with intent to distribute a controlled substance, to wit: ████████████████████████████, a schedule II Controlled Substance.

in violation of Title ████ United States Code ████████████████

I further state that I am a(n) <u>Task Force Officer</u> and that this complaint is based on the following
                                    Official Title

facts: See Attachment A

Continued on the attached sheet and made a part      ☒ Yes    ☐ No

_____
Stephen Haack
Signature of Complainant

Sworn to before me, and subscribed in my presence,

February 16, 2006                  at <u>El Paso, Texas</u>
Date                                             City and State

<u>Norbert J. Garney, U.S. Magistrate Judge</u>
Name and Title of Judicial Officer               Signature of Judicial

1

ATTACHMENT A

Affiant, Stephen Haack, Drug Enforcement Administration, United States Department of Justice, being duly sworn does depose and state the following.

That affiant is a Detective with the El Paso County Sheriff's Office with approximately eleven years of experience. That affiant is assigned to the Drug Enforcement Administration, El Paso Field Division, as a Task Force Officer since October of 2004. That affiant has received specialized training in controlled substance violations to include but not limited to Title 21 of the United States Code. That affiant is familiar with and has participated in several investigations involving the transportation, storage and distribution of controlled substances and United States Currency.

1. This affidavit is prepared in support of a complaint charging Amelia PEREZ DE ACOSTA and Martha BARRAZA Aguirre, with a violation of Title 21, United States Code, Section 841 (a) (1), Possession with Intent to Distribute approximately 11.36 kilograms (25 pounds) of cocaine.

2. On 02/15/2006, Border Patrol Agents Ronnie Monclova, Ryan Landrum and Luis Villa were assigned traffic check duties at the United States Border Patrol Checkpoint on Hwy. 62/180 Desert Haven, Texas. At approximately 1000 hrs, Agent Villa was manning the primary inspection lane when a silver Dodge Durango bearing Texas license plate 969-JFR with two visible occupants approached for inspection. Agent Villa identified himself as a Border Patrol Agent and asked the subjects to state their citizenship. The driver PEREZ DE ACOSTA, Amelia (DOB: 08/19/1957) presented Agent Villa with a Resident Alien Card (A# 078-313-066) and the passenger, BARRAZA-AGUIRRE, Martha (DOB: 10/30/1960) presented a Border Crosser Card (BCC) and an I-94 permit. As Agent Villa accepted the Resident Alien Card from PEREZ DE ACOSTA he noticed that her hand was visibly shaking.

3. As Agent Villa was inspecting their immigration documents, he asked PEREZ DE ACOSTA her intended destination and purpose of travel. She stated that she and her passenger, who she identified as her aunt, were going to Carlsbad, New Mexico merely to become acquainted with the area. Without being asked, PEREZ DE ACOSTA stated that her aunt, Martha BARRAZA-Aguirre, had come into El Paso and wanted to visit Carlsbad, New Mexico. Agent Villa then questioned PEREZ DE ACOSTA as to where she was currently residing. PEREZ DE ACOSTA stated that she has been living on Rubin Street in Sunland Park, New Mexico for the last six months and that she had been splitting her time between Chihuahua, Chihuahua, Mexico and Sunland Park. Agent Villa asked PEREZ DE ACOSTA the length of time that they intended to stay in Carlsbad, New Mexico and PEREZ DE ACOSTA stated that they were staying until Sunday. Agent Villa questioned both subjects if they had any relatives or friends in the Carlsbad area. PEREZ DE ACOSTA stated that they did not and that they were merely visiting to become acquainted with the area. Through his experience, Agent Villa did not identify Carlsbad, New Mexico as an area typically known for lengthy stays and became suspicious because of the five-day visit.

4. As Agent Villa peered into the back passenger side window of the Durango, he noticed multiple maps of the United States of America. Agent Villa also found this odd because Carlsbad is only about 120 miles east of El Paso and is clearly marked by highway signs. At this time Agent Villa noticed that PEREZ DE ACOSTA began squirming in her seat and trying to get his attention. PEREZ DE ACOSTA became flirtatious with him and invited him to join them for the weekend in Carlsbad. Given the aforementioned facts and nervousness Agent Villa referred the vehicle into the secondary inspection area.

5. Once in the secondary inspection area Agent Landrum conducted a non-intrusive canine sniff of the exterior of the vehicle. Agent Landrum indicated to Agents Villa that his canine partner Tosca had alerted to the back rear quarter panel of the Durango. Upon inspection of the interior back seat of the Durango Agent Monclova found a hand written set of directions on a Sleep Inn notepad from El Paso, Texas to Harrisburg, New Jersey via Hwy. 62/180. This displayed more inconsistencies in the subjects' story. Agents Monclova and Villa then noticed that one of the screws, which held the plastic quarter panels in place, was missing. Being that that the Durango had only 2,300 miles and was practically new, the Agents grew increasingly suspicious of possible tampering with the panel. The agents inspected the natural voids located within the quarter panels of the vehicle. They noticed individual bundles wrapped in brown packing tape consistent with the concealment and packaging methods used to smuggle narcotics in the past. Agent Landrum probed one of the bundles and retrieved a white powdery substance consistent with that of cocaine. The agents then placed both subjects under arrest and escorted them into the checkpoint for processing. Agent Villa read both subjects their rights as per form I-214(S) with Agent Landrum as a witness.

6. The agents returned to the Durango and retrieved 10 individual bundles of a white powdery substance wrapped in brown packing tape. Agent Landrum field-tested the white powdery substance and it tested positive for the properties of cocaine. A total of 25.00 pounds of cocaine was retrieved.

7. Agent Marlene Castro was dispatch from her assigned line watch duties to perform a search incident to arrest on both females. While searching BARRAZA she (BARRAZA), told Agent Castro that she wrote the directions from El Paso, Texas to Harrisburg, New Jersey because she was just looking at the map.

8. The 2006 Dodge Durango bearing Texas license plate 969-JFR (VIN# 1d4HD38K66F140223) is registered to Amelia ACOSTA of 500 Rubin #1512, El Paso, Texas. The 72-hour lane check of the license plate returned negative. The odometer read 2,561 miles. An inventory search of the vehicle revealed that the subject's luggage contained mostly cold weather clothing like sweaters and jeans. The current weather conditions in El Paso and the Carlsbad area were 65 to 70 degree temperate.

9. Agents Landrum and Monclova performed a seven-point inspection of the Durango with negative results. Agent Villa conducted an additional canine sniff of the vehicle yielding no additional narcotics or concealed humans.

10. On February 15, 2006, at approximately 12:45 PM, the affiant, TFO Stephen Haack, and SA Jason Hoff made contact with Amelia PEREZ DE ACOSTA, and Martha BARRAZA Aguirre, hereafter referred to as PEREZ DE ACOSTA and BARRAZA, at the USBP Sierra Blanca Checkpoint, Sierra Blanca, TX. TFO Haack and SA Hoff informed both PEREZ DE ACOSTA and BARRAZA of their Miranda Warning, both verbally and in writing. SA Hoff spoke with both PEREZ DE ACOSTA and BARRAZA concerning the cocaine in the Dodge Durango. Both subjects refused knowledge in the possession of the cocaine as detailed below.

11. When questioned by SA Hoff, BARRAZA requested to speak to an attorney and the interview was terminated. When questioned by SA Hoff, PEREZ DE ACOSTA stated that her boyfriend of four months named FLACO, had recently purchased the Durango for her. A check of the vehicle registration showed the vehicle to be registered to PEREZ DE ACOSTA. It also showed there to be no lien on the vehicle. SA Hoff then asked if FLACO was rich since he purchased the Durango for her outright. She first stated that she didn't know but compared to her, he was rich. PEREZ DE ACOSTA stated to SA Hoff that she was unemployed though she was in possession of over $1000 in U.S. currency at the time of her arrest.

12. Throughout the entire duration that SA Hoff spoke to PEREZ DE ACOSTA and BARRAZA, they both maintained a relatively calm composure. PEREZ DE ACOSTA seemed to become frustrated only when SA Hoff refused to allow her to call FLACO. It appeared to SA Hoff that PEREZ DE ACOSTA intended to contact FLACO to inform him of what had happened, not because she believed that FLACO would help her.

12. On February 15, 2006, at approximately 1:30 PM, Amelia PEREZ DE ACOSTA and Martha BARRAZA Aguirre were placed under arrest for Possession with Intent to Distribute Cocaine.

13. On February 15, 2006, TFO Stephen Haack contacted AUSA, Juanita Fieldmen, who accepted the case for federal prosecution.